### IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| DIOCESAN MIGRANT<br>& REFUGEE SERVICES, INC. | §<br>§<br>§ | |
| v. | § | Civil Action No. 3:19-CV-00236 |
| | § | |
| UNITED STATES IMMIGRATION | § | COMPLAINT FOR |
| AND CUSTOMS ENFORCEMENT | § | DECLARATORY AND |
| | § | INJUNCTIVE RELIEF |

## PLAINTIFF'S ORIGINAL COMPLAINT

## I.     PRELIMINARY STATEMENT

1.     In March 2019, the U.S. government implemented a policy in the El Paso sector titled the Migrant Protection Protocols ("MPP").  Pursuant to the MPP, selected asylum seekers must remain in Mexico while they wait for U.S. immigration judges to hear their asylum cases – exposing individuals and families to imminent threat of murder, kidnapping, rape, assault, and other violence in Ciudad Juárez and limiting their access to counsel.

2.     When asylum seekers subjected to the MPP are scheduled to appear in front of an immigration judge, they are only allowed to enter the United States in the custody of U.S. Immigration and Customs Enforcement ("ICE") for purposes of the hearing.

3.     During the entire time they are in the United States to attend their hearing, they are under the direct custody of ICE.  ICE controls who the asylum seekers subjected to the MPP may speak with and where they may go while they are in the United States.

4.     There are currently over 12,000 migrants under the auspices of the MPP in the El Paso-Ciudad Juárez region.

5.      Only around 1.3 percent of asylum seekers subjected to the MPP are currently represented by counsel.

6.      Well-established local organizations – including Diocesan Migrant and Refugee Services ("DMRS"), Catholic Charities of Southern New Mexico, and Las Americas Immigrant Advocacy Center, among others – regularly provide important know-your-rights information for asylum seekers prior to their appearance in front of an immigration judge.  Asylum seekers subjected to the MPP are only in the United States for brief stretches of time on the days they have hearings in the immigration courts.  On those days, these organizations have only been able to speak with asylum seekers subjected to this new policy about their rights during a one-hour period prior to their hearings.  These organizations provided informal know-your-rights presentations in the public waiting area where the asylum seekers were held in ICE custody prior to their hearings, from the inception of the MPP in the El Paso sector until approximately June 25, 2019.

7.      On or about June 25, 2019, ICE and the U.S. Department of Justice Executive Officer for Immigration Review ("DOJ-EOIR") informed staff of these organizations that they would no longer be permitted to provide know-your-rights information to asylum seekers in the waiting area.  These U.S. governmental entities stated that they were acting pursuant to policies that have not been disclosed to DMRS or any other organization that was providing these much-needed services.

8.      This case is about the unlawful refusal of ICE to timely and fully release agency records about this clandestine policy in response to the Freedom of Information Act ("FOIA") request Plaintiff filed on July 1, 2019.

## II.      <u>JURISDICTION AND VENUE</u>

9.      This Court has subject-matter jurisdiction over Plaintiff's FOIA claims pursuant to 28 U.S.C. § 1331 (federal question) and 5 U.S.C. § 552(a)(4)(B) (FOIA). Plaintiffs' request for

declaratory and other relief is properly subject to this Court's subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 2201(a), and 2202.

10.     Venue is proper within this District under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(b)(1), (b)(2), and (e)(1).

### III.     PARTIES

11.     Plaintiff **DMRS** is a 501(c)(3) organization based on El Paso, Texas.

12.     DMRS is the largest provider of free and low cost immigration legal services in West Texas and New Mexico.  Its mission is to provide legal services to immigrants and engage in public advocacy and community outreach to advance justice and protect the rights of those they serve in the spirit of gospel values.

13.     DMRS serves individuals residing in eleven counties in Far West Texas and in the state of New Mexico.

14.     An integral part of DMRS's work is the provision of no-cost, know-your-rights presentations to members of the community and those who are in custody.  DMRS also hosts Continuing Legal Education seminars for practicing attorneys so they may understand the ever-changing landscape of immigration law.

15.     DMRS also engages in dissemination of information as part of its mission.  DMRS regularly sends press releases to extensive media lists about the changing immigration laws and its impact on the border region.

16.     DMRS has two full-time staff dedicated to distributing its publications and announcements through its website, its blogs, its newsletters, its email listserv, and press releases. Its Facebook page has more than 1,500 followers and its Twitter account has more than 375 followers.  In 2018 alone, DMRS was featured in more than 20 news stories – including local, statewide, and national outlets.

17.     Timely, complete, and accurate information about ongoing government operations is key to the effectiveness of DMRS' legal services and advocacy work.

18.     Plaintiff has constructively exhausted all non-futile administrative remedies.

19.     Defendant **U.S. Immigration and Customs Enforcement** ("ICE") is an executive agency component of the U.S. Department of Homeland Security ("DHS") and an "agency" within the meaning of 5 U.S.C. § 552(f)(1).

## IV.     FACTS

**A.     The Implementation of the MPP and its Effect on Asylum Seekers' Rights to Counsel.**

20.     The MPP were created by the U.S. Department of Homeland Security ("DHS") in January 2019 to drastically change how the claims of many asylum seekers – including families – would be processed by DHS and DOJ-EOIR.

21.     The MPP ordered that "certain foreign individuals entering or seeking admission to the U.S. from Mexico . . . may be returned to Mexico and wait outside of the U.S. for the duration of their immigration proceedings . . ."[1]

22.     Under this policy, the U.S. government forces asylum seekers to return to regions of Mexico experiencing record levels of violence, where they must remain for the duration of their asylum proceedings.

23.     The MPP began in California in January 2019 and came to the El Paso sector in March 2019 – drastically changing the landscape of the provision of legal services to migrants.[2]

24.     Under the MPP, for persons suspected of entering the United States without inspection ("EWI") via the southern border between Ports of Entry, DHS applies unpublished

---

[1] U.S. Dep't of Homeland Security, *Migrant Protection Protocols,* (Jan. 24, 2019), *available at* https://www.dhs.gov/news/2019/01/24/migrant-protection-protocols (last accessed July 25, 2019).
[2] Mónica Ortiz Uribe, "Migrant Protection Protocols May Not Deliver Promised Aid to Asylum-Seekers," National Public Radio (May 9, 2019), *available at* https://www.npr.org/2019/05/09/721704472/migrant-protection-protocols-may-not-deliver-promised-aid-to-asylum-seekers.

criteria to select some of these persons to enter into ordinary removal proceedings under 8 U.S.C. § 1225(b)(2) rather than expedited removal proceedings under 8 U.S.C. § 1225(b)(1).

25.     Under the MPP, DHS places all persons who meet the definition of "arriving alien" stated in 8 C.F.R. § 1001.1(q) in ordinary removal proceedings under 8 U.S.C. § 1225(b)(2).

26.     For those persons placed in ordinary removal proceedings, whether EWI or "arriving aliens," DHS selects individuals who will be returned to Mexico pursuant to the MPP for the duration of their ordinary removal proceedings. These individuals are provided with a Notice to Appear for their immigration court proceedings, a handout with initial MPP processing information, and a list of legal service providers. Their initial hearing before an immigration judge is often months out. Those in the El Paso sector are then unceremoniously pushed back into Ciudad Juárez to wait until their first hearing date.

27.     Asylum seekers who are subjected to the MPP are not Mexican citizens and rarely have any connection to the Ciudad Juárez region. They are usually penniless and are typically not authorized to work in the country of Mexico. Shelters in Ciudad Juárez and other border communities are perpetually overcapacity. They cannot and do not offer housing to all individuals subjected to the MPP.

28.     As a result, migrants subjected to the MPP are forced to live on the streets or in other precarious conditions and are put at an increased risk of murder, kidnapping, rape, assault, extortion, trafficking, and other violence.[3]

---

[3] *See, id.  See also* Tanvi Misra, "An expanded 'remain in Mexico' policy may cause more suffering, not curb migration," Roll Call (June 10, 2019), *available at* https://www.rollcall.com/news/congress/expanded-remain-mexico-policy-may-cause-suffering-not-curb-migration; Joel Rose and Laura Smitherman, "Fear, Confusion and Separation as Trump Administration Sends Migrants Back to Mexico," National Public Radio (July 1, 2019), available at https://www.npr.org/2019/07/01/736908483/fear-confusion-and-separation-as-trump-administration-sends-migrants-back-to-mex.

29.     These conditions make it difficult for migrants subjected to the MPP to prepare their asylum applications.  Instead of being able to focus on their cases, asylum seekers forced to return to Mexico have to focus on trying to survive.

30.     This increased risk is particularly concerning given that many asylum seekers subjected to the MPP are family units, including infants and children.[4]

31.     As a result of these conditions, most private practitioners refuse to take the asylum cases of migrants subjected to the MPP because of the risk and time it takes to handle these cases with clients living in precarious conditions in Ciudad Juárez.[5]

32.     No reliable means of communication exist to facilitate representation of asylum seekers forced to remain in Mexico, as many lack access to telephones or internet connections. Lines for pedestrians and vehicles seeking to enter the United States at Ports of Entry routinely require an hours-long wait, impeding attorney-client visits in Mexico.  Attorneys are further deterred by the challenge of arranging insurance coverage, visas, and other logistics.

33.     Harassment of U.S.-based immigration attorneys by Mexican authorities—and by U.S. authorities upon return to the United States—has become a persistent concern.

34.     In addition, nonprofit organizations – which are responsible for the safety of their staff – are also finding it increasingly difficult to attend to the legal needs of this vulnerable population as they, themselves, start to become targets of organized crime.

35.     The conditions in Mexican border communities pose security threats to U.S. attorneys, both due to generalized violence and targeted violence.  Staff members of the organizations attempting to provide legal services to asylum seekers subjected to the MPP have been approached by coyotes and threatened by kidnappers who prey on their clients.

---

[4] *Monica Ortíz Uribe,* "Migrant Protection Protocols May Not Deliver Promised Aid to Asylum-Seekers."
[5] Julian Resendiz, "Migrants Struggling for Lawyers," KTSM (June 12, 2019), available at https://www.ktsm.com/news/migrants-struggling-for-lawyers/.

36.     These dangers have become so concerning that a union representing asylum officers – the federal employees responsible for handling the *non-refoulement* interviews for migrants subjected to the MPP – recently filed an amicus brief opposing the MPP because it may send asylum seekers to locations where they will face persecution in violation of U.S. and international refugee law.[6]

37.     The only times that individuals subjected to the MPP are permitted to enter the United States are on the dates of their hearings in immigration court.

38.     On those dates, they must present at a designated Port of Entry, and DHS allows them into the United States only for the brief period necessary to attend their removal proceedings. ICE transports them from the Port of Entry to the immigration court, maintains custody of them for the duration of their time in court, and transports them back to the Port of Entry after their hearing.  ICE personnel and contractors, some of whom are armed, escort the asylum seekers for the entirety of their time in the United States.  After each hearing, they are again forced to return to Mexico until their next hearing date.

39.     DMRS and other local immigrant rights organizations and attorneys—most of which are on the list of legal service providers given to asylum seekers during their initial processing pursuant to the MPP—focused their efforts on providing legal services during the brief periods of time that asylum seekers are in the United States for their proceedings in immigration court.  This focus was particularly necessary given the severity of the security risks in Ciudad Juárez and the significant barriers to access to counsel there.

---

[6] Camilo Montoya-Galvez, "Asylum officers ask court to block Trump's 'Remain in Mexico' policy in surprising filing," CBS News (June 27, 2019), *available at* https://www.cbsnews.com/news/remain-in-mexico-asylum-officers-ask-federal-court-to-block-trump-administration-immigration-policy/.

40.     Under the MPP policy, individuals subjected to the MPP are afforded one hour to meet with counsel prior to their scheduled hearing time on the days they have proceedings in immigration court.[7]

41.     At no cost, DMRS and other legal service providers routinely met with *pro se* migrants subjected to the MPP in the waiting area of the immigration court, during the designated one-hour period, until ICE and DOJ-EOIR prohibited those activities.  They provided individual consultations and general know-your-rights presentations to these migrants in the critical time that migrants had immediately before they would face an immigration judge in their case.  At the discretion of the immigration judges, these legal service providers would also regularly serve as the "friend of court" during removal proceedings for asylum seekers subjected to the MPP.

42.     This limited time to provide know-your-rights information was a vital part of securing access to counsel and providing migrants subjected to the MPP with an opportunity to understand this foreign and constantly changing legal system.

43.     Given the sheer impossibility for legal service providers along the border to provide full representation to the thousands of migrants subjected to the MPP, the know-your-rights presentations were an essential means of providing fundamental information to *pro se* migrants.

44.     Further, the "friend of court" provided important assistance to the immigration judges to help ensure that migrants subjected to the MPP were able to understand and participate in the proceedings that would ultimately determine whether they were permitted to obtain refuge in the United States.

---

[7] Memorandum from Nathalie R. Asher, Acting Executive Associate Director, to Field Office Directors, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement, "Migrant Protection Protocols Guidance" at 3 (Feb. 12, 2019), available at https://www.ice.gov/sites/default/files/documents/Fact%20sheet/2019/ERO-MPP-Implementation-Memo.pdf.

45.     Individuals in removal proceedings have a right to legal representation.  A vital element of this right includes the ability of such individuals to access legal counsel.  This principle is reflected and recognized in the MPP policy.[8]

46.     Nonetheless, in or around June 25, 2019, ICE and DOJ-EOIR made the unannounced decision to block access by any legal service provider to *pro se* migrants awaiting their court hearing in the waiting area of the immigration courts in El Paso, Texas.

47.     While this new policy was not published or made publicly available, legal service providers were told in-person by ICE and DOJ-EOIR that the new policy meant that no "third-party contact" with migrants subjected to the MPP would be permitted, other than for attorneys who had entered an appearance on behalf of a respondent.

48.     In practice, since the implementation of the decision on June 25, 2019, attorneys in El Paso are only able to access their individual clients during the designated one-hour period before their hearing if they present a file-stamped EOIR-28 form to the ICE personnel or contractors who are guarding the migrants subjected to the MPP who have been brought to court that day.

49.     Since approximately June 25, 2019, no one has been permitted to do know-your-rights presentations or legal consultations or intakes for *pro se* MPP respondents.

50.     In addition, in or around July 8, 2019, DOJ-EOIR made the unannounced decision to prohibit "friend of court" for all removal proceedings for migrants subjected to the MPP.

51.     Legal service providers in El Paso have been told repeatedly in-person by DOJ-EOIR that the immigration judges no longer have the discretion to determine whether to permit attorneys to serve as "friend of court" in MPP proceedings.

52.     Since approximately July 8, 2019, no one has been permitted to serve as "friend of court" in the El Paso immigration courts for *pro se* migrants subjected to the MPP.

---

[8] *Id.*

53.     Neither DMRS nor any of the other legal service providers who had been providing know-your-rights information to *pro se* migrants subjected to the MPP had ever been told by ICE or DOJ-EOIR of any substantive concerns regarding their contact with migrants during the designated hour before court.

54.     Indeed, these organizations are listed on the legal service providers handout that asylum seekers receive when placed into the MPP, and during their hearings immigration judges routinely urge them to contact attorneys on that list.

55.     Nevertheless, ICE and DOJ-EOIR now prohibit these organizations from having any contact with *pro se* asylum seekers on the days that they appear for court, based on clandestine policies that have not been made available to the affected organizations.

56.     Meanwhile, implementation of the MPP policy has expanded to additional locations along the U.S.-Mexico border.[9]

57.     More than 20,000 migrants have already been forced to return to Mexico pursuant to this policy.[10]

58.     At current rates, more than 110,000 migrants are likely to be subjected to the MPP by the end of this calendar year.  Lack of access to counsel is a critical issue for these asylum seekers.

---

[9] Gus Bova, "Nuevo Laredo, Trump's 'Remain in Mexico' Program Feels Chaotic and Dangerous," Texas Observer (July 31, 2019), available at https://www.texasobserver.org/in-nuevo-laredo-trumps-remain-in-mexico-program-feels-chaotic-and-dangerous/; Camilo Montoya-Galvez, "U.S. will now return asylum seekers to one of Mexico's most dangerous areas," CBS News (July 19, 2019), available at https://www.cbsnews.com/news/remain-in-mexico-u-s-will-now-return-asylum-seekers-in-rio-grande-valley-back-to-mexico/.
[10] Gus Bova, "Nuevo Laredo, Trump's 'Remain in Mexico' Program Feels Chaotic and Dangerous."

59.     It was recently reported that in an internal email, an unnamed National Security Council official stated, "My mantra has persistently been presenting aliens with multiple unsolvable dilemmas" in order to deter them from coming to the United States.[11]

60.     This is the troubling context in which ICE and DOJ-EOIR have instituted their new clandestine policies restricting access to counsel for migrants subjected to the MPP.

**B.      Defendants' Unlawful Withholdings in Response to Plaintiffs' FOIA Request.**

61.     On July 1, 2019, Plaintiff sent ICE a FOIA request seeking records in ICE's possession regarding any policies applicable to access to counsel pursuant to the MPP. **Exhibit #1**. Plaintiff's request included but was not limited to:

> 1.      Any policies, rules, interpretations, instructions, procedures, or guidance documents that were created, modified, or disseminated in June 2019 that are applicable to access to counsel pursuant to the Migrant Protection Protocols, specifically regarding the one hour prior to the scheduled hearing time in immigration court that affords respondents an opportunity to meet in person with attorneys.
>
> 2.      Any policies, rules, interpretations, instructions, procedures, or guidance documents that were created, modified, or disseminated between December 1, 2018 and the date of processing of this request that are applicable to access to counsel pursuant to the Migrant Protection Protocols and that discuss, describe, reference, or otherwise refer to:
>
> > a.      Know Your Rights presentations or other orientations or general information sessions provided to respondents subjected to the Migrant Protection Protocols, during the one hour prior to their scheduled hearing time in immigration court;
> > b.      Individuals serving as Friend of the Court during removal proceedings for respondents pursuant to the Migrant Protection Protocols;
> > c.      The location(s) in which respondents subjected to the Migrant Protection Protocols shall be seated or otherwise restricted to, during the one hour prior to the scheduled hearing time in immigration court that affords respondents an opportunity to meet in-person with attorneys;

---

[11] Julia Ainsley, "Stephen Miller wants Border Patrol, not asylum officers, to determine migrant asylum claims," NBC News (July 29, 2019), available at https://www.nbcnews.com/politics/immigration/stephen-miller-wants-use-border-agents-screen-migrants-cut-number-n1035831.

d.    The handling of respondents subjected to the Migrant Protection Protocols by EOIR security personnel, ICE ERO, or contractors associated therewith, during the one hour prior to the scheduled hearing time in immigration court that affords respondents an opportunity to meet in-person with attorneys; and

e.    The provision of information to attorneys, accredited representatives, or others – and any restrictions or prohibitions thereof – regarding the EOIR docket or upcoming hearing dates for respondents subjected to the Migrant Protection Protocols, including but not limited to any redactions of respondents' A-numbers.

3.    Any correspondence, memoranda, reports, notes, meeting notes, calendars, telephone logs, or other records – whether in proposed, draft, or final form, and whether paper or electronic (including e-mail or cables) – that discuss, describe, reference, or otherwise refer or apply to the subject areas listed in categories 1 and 2 above.

62.    Plaintiff requested expedited processing of their request based on several grounds.

**Exhibit #1.**

63.    To date, ICE has not provided any letter or correspondence regarding Plaintiff's FOIA request.

64.    ICE has failed to accept or deny Plaintiff's request for expedited processing.

## V.    CLAIMS FOR RELIEF

### COUNT ONE: VIOLATION OF THE FREEDOM OF INFORMATION ACT
### 5 U.S.C. § 552(a)(4)(B)
### DENIAL OF EXPEDITED PROCESSING

65.    Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs.

66.    Plaintiff sought expedited processing of their request based on several factors demonstrating a compelling need as articulated in their original request to ICE. 5 U.S.C. § 552(a)(6)(E); 6 C.F.R. § 5.5(e)(3).

67.    Plaintiff has demonstrated a compelling need for the expedited processing of their FOIA request.

68.     ICE's failure to grant Plaintiff's request for expedited processing constitutes an unlawful withholding of agency records in violation of the FOIA.

69.     Plaintiff has constructively exhausted all available administrative remedies.

### COUNT TWO: VIOLATION OF THE FREEDOM OF INFORMATION ACT
### 5 U.S.C. § 552(a)(4)(B)
### UNLAWFUL WITHHOLDING OF AGENCY RECORDS BY ICE

70.     Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs.

71.     Plaintiff has a legal right under FOIA to timely search and release of responsive, non-exempt agency records responsive to her July 1, 2019 FOIA request.

72.     No legal basis exists for ICE's failure to adequately and timely search for and release responsive agency records in compliance with FOIA's time limits.

73.     ICE's failure to make reasonable and timely efforts to search for and release responsive agency records constitutes an unlawful withholding under the Act that this Court can and should remedy through declaration and injunction.

74.     Because ICE has failed to comply with the Act's time limits, Plaintiff has constructively exhausted her administrative remedies.

## VI.     REQUEST FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

1.     Enter judgment in favor of Plaintiff and against all Defendants.

2.     Order Defendants to process Plaintiff's FOIA request expeditiously in accordance with 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(e).

3.     Declare Defendants' withholdings under the FOIA unlawful and enjoin these unlawful withholdings.

4.      Order Defendants to, as soon as practicable, conduct a prompt and adequate search for all responsive records, determine which, if any portions of such records are exempt, and require Defendants to release the remaining portions of these agency records.

5.      Award Plaintiff reasonable costs and attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(E) and/or 28 U.S.C. § 2412(d)(1)(A).

6.      Award Plaintiff such further relief as the Court deems just, equitable, and appropriate.

Date Submitted: August 22, 2019             Respectfully submitted,

                                            THE LAW OFFICE OF LYNN COYLE, PLLC
                                            2515 N. Stanton Street
                                            El Paso, Texas 79902
                                            Telephone:  (915) 532-5544
                                            Facsimile:  (915) 532-5566

                                            /s/ Christopher Benoit
                                            **LYNN COYLE**
                                            State Bar No. 24050049
                                            lynn@coylefirm.com
                                            **CHRISTOPHER BENOIT**
                                            State Bar No. 24068653
                                            chris@coylefirm.com

                                            and

                                            /s/ R. Andrew Free
                                            ***R. ANDREW FREE,** TN BPRN 030513
                                            THE LAW OFFICE OF R. ANDREW FREE
                                            P.O. Box 90568
                                            Nashville, TN 37209
                                            Telephone: (844) 321-3221x1
                                            Facsimile: (615) 829-8959
                                            Andrew@ImmigrantCivilRights.com

                                            **ATTORNEYS FOR PLAINTIFF**
                                            *Application for admission pro hac vice forthcoming

# EXHIBIT 1

| | |
|---|---|
| **From:** | Melissa M. Lopez <mlopez@dmrs-ep.org> |
| **Sent:** | Monday, July 01, 2019 11:28 PM |
| **To:** | ICE-FOIA@dhs.gov |
| **Subject:** | FOIA Request |
| **Attachments:** | MPP FOIA Request ICE.pdf |

Attached is a FOIA Request being submitted by our office.  Please let me know if you have any questions.

*Thanks,*

*Melissa M. Lopez*

*Executive Director/Attorney at Law*
*Diocesan Migrant & Refugee Services, Inc.*
*2400 A E. Yandell Dr.*
*El Paso, TX 79903*
*(915) 532-2688 Direct Dial*
*(915) 532-3975 DMRS Main Line*
*(915) 532-4071 Fax*



*\*\*\*This communication may contain privileged and/or confidential information.  The information is intended only for the person or entity to which it is addressed.  If you are not the intended recipient, you are hereby notified that disclosing, copying, or distributing of the contents is strictly prohibited.  If you have received this message in error, please contact the sender and destroy any copies of this document.*



June 26, 2019

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009

*VIA EMAIL (ICE-FOIA@dhs.gov)*

**RE:** **Freedom of Information Act Request – Access to Counsel for Respondents Subjected to the Migrant Protection Protocols**

**EXPEDITED PROCESSING REQUESTED**

**FEE WAIVER REQUESTED**

To Whom It May Concern:

On behalf of Diocesan Migrant & Refugee Services, Inc. (DMRS) and pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(3), I write to request the following records:

1. Any policies, rules, interpretations, instructions, procedures, or guidance documents that were created, modified, or disseminated in June 2019 that are applicable to access to counsel pursuant to the Migrant Protection Protocols, specifically regarding the one hour prior to the scheduled hearing time in immigration court that affords respondents an opportunity to meet in-person with attorneys.[1]

2. Any policies, rules, interpretations, instructions, procedures, or guidance documents that were created, modified, or disseminated between December 1, 2018 and the date of processing of this request that are applicable to access to counsel pursuant to the Migrant Protection Protocols, and that discuss, describe, reference, or otherwise refer to:

   a. Know Your Rights presentations or other orientations or general information sessions provided to respondents subjected to the Migrant Protection Protocols, during the one hour prior to their scheduled hearing time in immigration court;

---

[1] Memorandum from Nathalie R. Asher, Acting Executive Associate Director, U.S. Immigration and Customs Enforcement, to Field Office Directors, Enforcement and Removal Operations, "Migrant Protection Protocols Guidance" at 4 (Feb. 12, 2019).

2400A E. Yandell  |  El Paso, TX 79903

Tel: 915.532.3975   |  Fax: 915.532.4071

Email: info@dmrs-ep.org  |  Web: www.dmrs-ep.org

SERVING THE PILGRIM PEOPLE OF GOD

    b.   Individuals serving as Friend of the Court during removal proceedings for respondents pursuant to the Migrant Protection Protocols;

    c.   The location(s) in which respondents subjected to the Migrant Protection Protocols shall be seated or otherwise restricted to, during the one hour prior to the scheduled hearing time in immigration court that affords respondents an opportunity to meet in-person with attorneys;

    d.   The handling of respondents subjected to the Migrant Protection Protocols by EOIR security personnel, ICE ERO, or contractors associated therewith, during the one hour prior to the scheduled hearing time in immigration court that affords respondents an opportunity to meet in-person with attorneys; and

    e.   The provision of information to attorneys, accredited representatives, or others—and any restrictions or prohibitions thereof—regarding the EOIR docket or upcoming hearing dates for respondents subjected to the Migrant Protection Protocols, including but not limited to any redactions of respondents' A-numbers.

3.  Any correspondence, memoranda, reports, notes, meeting notes, calendars, telephone logs, or other records—whether in proposed, draft, or final form, and whether paper or electronic (including e-mail or cables)—that discuss, describe, reference, or otherwise refer or apply to the subject areas listed in categories 1 and 2 above.

This request does not apply to documents that have been published in the Federal Register or that are currently available to the public on the websites for the Department of Justice or the Department of Homeland Security.

If it is your position that responsive records exist but that those records (or portions of those records) are exempt from disclosure, please identify the records that are being withheld and state the basis for the denial for each record being withheld. In addition, please note that DMRS seeks each record *in its entirety*. Accordingly, please provide all nonexempt portions of the records, without redacting portions of any records as "non-responsive," "out of scope," or the like.

I request that any records produced in response to this request be provided in electronic form wherever possible.

**Request for Expedited Processing**

DMRS requests that this FOIA request be expedited pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(e) because this FOIA request involves: (1) the loss of substantial due process rights; (2) circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of individuals subjected to the Migrant Protection Protocols; and (3) an urgency to inform the public about an actual or alleged federal government activity. I am attaching a statement that I certify to be true and correct to the best of my knowledge and belief regarding this request for expedited processing. ***See Attachment 1.***

**Fee Waiver Request**

DMRS requests that all fees in connection with this FOIA request be waived in accordance with 5 U.S.C. § 552(a)(4)(A)(iii) because DMRS does not seek the records for a commercial purpose and disclosure "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government."

DMRS is the largest provider of free and low cost immigration legal services in West Texas and New Mexico. Our mission is to provide legal services to immigrants and engage in public advocacy and community outreach to advance justice and protect the rights of those we serve in the spirit of gospel values. We provide a comprehensive range of immigration legal services including representation in family-based immigration matters, citizenship and naturalization matters, matters related to benefits for survivors of domestic violence and other crimes, removal proceedings before the immigration courts, and services for adults and unaccompanied immigrant children detained in the local immigration detention centers and shelters. DMRS has been serving the immigrant community since 1986. DMRS serves individuals residing in eleven counties in Far West Texas, including El Paso, Brewster, Culberson, Hudspeth, Jeff Davis, Loving, Pecos, Presidio, Reeves, Ward, and Winkler counties as well as individuals residing in the state of New Mexico. DMRS does not have a commercial interest in the requested records.

The records requested will provide important, nonpublic information that directly relates to EOIR's operations and activities regarding the implementation of the Migrant Protection Protocols. It has come to our attention recently that EOIR appears to have recently changed its policies and practices regarding access to counsel for migrants subjected to the Migrant Protection Protocols, without announcing publicly what any such change may be. The requested records will thus be meaningfully informative about the government's policies and practices in this area, and will contribute significantly to public understanding of EOIR's policies and practices regarding the Migrant Protection Protocols.

Moreover, the requested records are of immense public concern, as shown by the substantial public attention already devoted to concerns regarding access to counsel for migrants subjected to the Migrant Protection Protocols. One news article published in April 2019 provided coverage of removal proceedings in El Paso for migrants subjected to the Migrant Protection Protocols, and highlighted their confusion regarding court proceedings as well as their grave fears regarding the potential harm they face upon being returned to Mexico.[2] Another recent news article addressed the practical and logistical challenges facing attorneys who wish to represent such migrants.[3] Yet another news article described the Migrant Protection Protocols as a "fundamental shift in the policy of asylum" and discussed U.S.-based lawyers' inability to provide competent counsel to people located in a different country.[4] As the U.S. Government's recent announcement regarding the tariff deal with Mexico included an anticipated expansion of

---

[2] https://www.texastribune.org/2019/04/26/migrants-border-face-confusion-and-fear-under-remain-mexico-policy/.
[3] https://www.npr.org/2019/05/09/721755716/trump-administrations-remain-in-mexico-program-tangles-legal-process.
[4] https://www.vox.com/2019/3/5/18244995/migrant-protection-protocols-border-asylum-trump-mexico.

3

the Migrant Protection Protocols across the entire southern border, the public's concern regarding the rights of migrants subjected to these Protocols has become even more heightened.

DMRS has expertise in the Migrant Protection Protocols and related areas of immigration enforcement, detention, and the impact on families and communities, and has the ability and intention to effectively convey the information it receives with the public free of charge. DMRS regularly hosts Continuing Legal Education seminars and provides community education presentations free of charge within its service area, on a wide variety of immigration topics. DMRS also has a demonstrated capacity to disseminate this information. DMRS has two full-time staff dedicated to distributing its publications and announcements through its website, its blogs, its newsletters, its email listserv, and press releases. Its Facebook page has more than 1,500 likes and regularly engages with its followers.[5] Its Twitter account has tweeted more than 350 times and has more than 375 followers.[6] DMRS regularly sends press releases to an extensive media list. In 2018, it earned more than 20 news stories, including coverage by the Washington Post,[7] CNN,[8] the Texas Tribune,[9] and many other local, statewide, and national outlets. DMRS's work routinely grabs headlines in major newspapers, broadcast media, social media, and academic journals. DMRS also makes its experts available to speak to the media, at conferences, and to testify before Congress and other public bodies.

Accordingly, I request that you waive all fees for locating and duplicating the requested records because DMRS is entitled to a public interest fee waiver. If, however, a waiver is not granted, please advise me of the amount of any proposed search, review, and reproduction charges before you conduct these activities.

***

I expect a response within 10 calendar days as provided by law. If you have any questions regarding this request, please contact me by phone at (915) 532-2688, or by email at mlopez@dmrs-ep.org.

Thank you for your attention to this matter.

Sincerely,

Melissa M. Lopez
Executive Director/Attorney at Law

---

[5] https://www.facebook.com/DMRSInc.
[6] https://twitter.com/elpasodmrs?lang=en.
[7] https://www.washingtonpost.com/local/immigration/ice-praised-legal-aid-program-for-immigrants-that-justice-dept-plans-to-suspend/2018/04/17/c0b073d4-3f31-11e8-974f-aacd97698cef_story.html?noredirect=on&utm_term=.0e861eed21ed.
[8] https://www.cnn.com/2018/06/21/us/undocumented-migrant-children-detention-facilities-abuse-invs/index.html.
[9] https://www.texastribune.org/2018/06/22/texas-legal-aid-group-trying-help-immigrant-children-detained-tornillo/.

**Statement in Support of Request for Expedited Processing for
Freedom of Information Act Request – Access to Counsel for Respondents
Subjected to the Migrant Protection Protocols**

1. My name is Melissa M. Lopez.  I am an attorney and the Executive Director of Diocesan Migrant & Refugee Services, Inc. (DMRS).

2. I am requesting expedited processing of this FOIA request pursuant to 5 U.S.C. § 552(a)(6)(E) because this FOIA request involves: (1) the loss of substantial due process rights; (2) circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of individuals subjected to the Migrant Protection Protocols; and (3) an urgency to inform the public about an actual or alleged federal government activity.

3. ***Loss of Substantial Due Process Rights:***  This FOIA request involves the loss of substantial due process rights.  It is well-established that individuals in removal proceedings have the right to legal representation.  A vital element of enjoyment of that right includes the ability of such individuals to access attorneys as prospective clients to determine whether the attorney will accept to represent them in removal proceedings. The Migrant Protection Protocols acknowledge the importance of access to counsel, in part by affording individuals subjected to the Migrant Protection Protocols one hour prior to their scheduled hearing time in immigration court to meet in-person with attorneys. Impediments to such individuals' access to counsel constitutes an immediate and abrupt interference with their substantial due process rights, including but not limited to their right to a meaningful opportunity to seek asylum and their right to non-refoulement.

4. ***Imminent Threat to Life or Physical Safety:***  This FOIA request involves circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of individuals subjected to the Migrant Protection Protocols.  As documented in numerous news articles, individuals subjected to the Migrant Protection Protocols face severe and imminent threats when they are returned to Mexico, including murder, kidnapping, rape, assault, extortion, and other violence.[1] Access to counsel is vital for such individuals to understand and exercise their rights, including their right to express fear of being returned to Mexico due to the risk that they will be subjected to persecution or torture there, and to thereby obtain a non-refoulement interview with a USCIS Asylum Officer.  Impediments to access to counsel for individuals subjected to the Migrant Protection Protocols, including but not limited to access to counsel during the one hour prior to respondents' scheduled hearing time in immigration court, directly result in such individuals' exposure to imminent threats to life or physical safety in violation of the U.S. Government's non-refoulement obligations.

5. ***Urgency to Inform the Public:***  This FOIA request involves an urgency to inform the public about an actual or alleged federal government activity.  Although DMRS is not a

---

[1] *See, e.g.*, https://www.insightcrime.org/news/brief/mexico-police-collude-criminals-kidnap-migrant/;
http://borderzine.com/2019/06/fate-of-pregnant-women-at-border-sparks-congresswomans-outrage/;
https://www.rollcall.com/news/congress/expanded-remain-mexico-policy-may-cause-suffering-not-curb-migration.

full-time member of the news media, its staff include persons who are primarily engaged in information dissemination. We will distribute this information through all of our Social Media platforms, including Facebook, Twitter, and Instagram. Additionally, we will share this information with numerous local attorneys via a list serve managed by DMRS as well as via an email blast to all DMRS supporters. There are numerous articles published on this issue, namely access to counsel for individuals subjected to the Migrant Protection Protocols, which is a strong indicator of the particular urgency to inform the public regarding the subject matter of this FOIA request.[2] This urgency extends beyond the public's right to know about government activity generally. The Migrant Protection Protocols are a relatively new governmental policy, which has attracted tremendous public concern regarding the rights and protections for individuals subjected to the Protocols. The most recent public outcry regarding impediments to accessing asylum for families arriving at the southern border, and corresponding concerns regarding access to counsel for such families, has amply demonstrated the gravity of the public's concern.[3] There is thus a particular urgency to inform the public of any additional impediments to access to counsel that have arisen since the initial launch of the Migrant Protection Protocols.

6. These considerations, whether considered separately or together, are more than sufficient to meet the standard set out in 5 U.S.C. § 552(a)(6)(E) for the agency to grant expedited processing of this FOIA request. For the reasons stated above, I respectfully request expedited processing of this FOIA request pursuant to 5 U.S.C. § 552(a)(6)(E).

I certify that this statement is true and correct to the best of my knowledge and belief.

_____
Melissa M. López

7/1/2019
Date

---

[2] *See, e.g.*, https://www.vox.com/2019/3/5/18244995/migrant-protection-protocols-border-asylum-trump-mexico; https://www.ktsm.com/news/migrants-struggling-for-lawyers/; https://www.vox.com/2019/5/2/18522386/asylum-trump-mpp-remain-mexico-lawsuit; https://www.krgv.com/news/effects-of-looming-expansion-of-remain-in-mexico-policy/; https://www.reuters.com/article/us-usa-immigration-returns-exclusive/exclusive-asylum-seekers-returned-to-mexico-rarely-win-bids-to-wait-in-u-s-idUSKCN1TD13Z; https://kfoxtv.com/news/local/migrants-unhappy-about-being-returned-to-mexico-after-being-apprehended; https://www.motherjones.com/politics/2019/06/trump-remain-mexico-asylum-seekers/.
[3] *See, e.g.*, https://www.newyorker.com/news/q-and-a/inside-a-texas-building-where-the-government-is-holding-immigrant-children; https://www.vox.com/policy-and-politics/2019/6/25/18715725/children-border-detention-kids-cages-immigration; https://www.houstonchronicle.com/news/houston-texas/houston/article/Trump-administration-still-separating-hundreds-of-14029494.php.